FILED
COURT OF APPEALS
DIVISION II

2014 SEP -9 PM 9: 22

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARTHA LEAH WOODS, | No. 44295-7-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF CORRECTIONS, and TERRI VAN AUSDLE and "JOHN DOE" VAN AUSDLE and their marital community, | UNPUBLISHED OPINION |
| Respondents. | |

LEE, J. — Martha Leah Woods appeals the superior court's order granting summary judgment in favor of her former employer the Department of Corrections (DOC). The superior court dismissed all of Woods's employment discrimination claims, her breach of contract claim, and her negligent supervision and retention claim. She also argues that the superior court erred in striking her expert's report. We affirm. We also deny Woods's request for attorney fees.

## FACTS

### A. 2005 SETTLEMENT AGREEMENT AND TRAINING

In September 2005, Woods entered into a settlement agreement with the DOC resolving a different lawsuit, pending grievances, and public records requests Woods filed against the DOC.

Under the terms of the settlement, Woods was transferred from her then current position as a secretary supervisor to a position as a corrections records specialist in the Lakewood field office beginning September 12, 2005. Woods was required to serve a 12-month trial service period in her new position. In regard to training for Woods's new position, the settlement agreement stated:

> 6. The training needs for Martha Woods shall be established between the supervisor of [Woods's new position] and Martha Woods no later than September 30, 2005. The Department of Corrections recognizes that Martha Woods will need job-specific training. The Department of Corrections agrees that in the absence of any other problem, lack of training or experience alone, will not be sufficient reason for reversion within the first six months of the trial service. Any dispute regarding the necessity for training shall be finally determined by the second line supervisor. Martha Woods waives any further right of appeal or right to grieve the decision.

Clerk's Papers (CP) at 26.

When Woods originally transferred to the records unit in the Lakewood field office, she was supervised by Sharon Dahlstrom. During the time that Woods was supervised by Dahlstrom, she primarily did records copying and filing. She also studied the records guide containing office procedure for handling records. In November 2005, Dahlstrom retired, and Terri Van Ausdle became Woods's direct supervisor.

A training plan was created for Woods by the human resources supervisor and reviewed and approved by Van Ausdle. Van Ausdle and Woods discussed and finalized the formal training plan on December 5, 2005. The formal training plan assigned specific employees to train Woods in particular areas. Van Ausdle signed off on Woods's completion of the formal training plan in May 2006.

B.     SEPTEMBER 2005-AUGUST 2006: RECORDS UNIT TRANSFER

Van Ausdle's initial evaluation of Woods's work performance was positive. However, Woods claims that Van Ausdle became more critical of her work and documented numerous errors after January 19, 2006, when Woods disclosed her fragile mental state to Van Ausdle. Van Ausdle does not remember Woods disclosing anything about her mental state.

Van Ausdle's January 2006 evaluation stated that Woods was difficult to train and did not follow directions well. Woods's subsequent evaluations continued to decline. After Woods completed the training plan, Van Ausdle provided Woods with a "Memo of Counseling" documenting many areas in which she needed to improve and providing examples of Woods's inappropriate behavior. CP at 177-88.

Woods perceived much of Van Ausdle's behavior as harassing. Her complaints are thoroughly documented in the grievance she filed with the DOC regarding a hostile work environment. She included allegations that Van Ausdle humiliated and belittled her. She also stated that Van Ausdle was hypercritical of her work and harassed her by documenting all of her behavior in the office. After an investigation, which included speaking to many other people in the records unit, the DOC determined that Van Ausdle's behavior was not discriminatory or based on a discriminatory intent. However, the investigation did note problems with Van Ausdle's communication and supervisory style, and provided recommendations for dealing with these problems.

C.     MEDICAL LEAVE

In early August 2006, Woods left the records unit and went on medical leave for a back injury (unrelated to her records unit position or mental condition). Woods had not yet completed

her one-year trial service period ending September 12, 2006. During the period of time Woods was on medical leave, she received Department of Labor and Industries (L&I) benefits. On February 7, 2007, while still on medical leave, Woods went to the records unit to get some of her belongings that were left in her desk. In her declaration, Woods stated:

> On February 7, 2007, [Woods] returned to the unit while still employed by DOC to collect some personal belongings. . . . As [Woods] prepared to leave the building with boxes in hand, Van Ausdle approached [Woods] from behind, stomping loudly and placing her legs right next to [Woods's] as if to trip her. . . . Van Ausdle's left leg touched [Woods's] clothing and her stomach touched [Woods's] upper buttocks area.

CP at 521.

### D. REQUEST FOR REVERSION TO SECRETARY SUPERVISOR

In June 2007, while still on L&I leave, Woods sent the DOC an e-mail requesting reversion to an open secretary supervisor position. Woods had held a secretary supervisor position prior to the settlement agreement transferring her to the records unit. In her e-mail, she stated that she was requesting to revert back to the secretary supervisor position, and only that position, and that the reversion would be effective on the day she obtained the secretary supervisor position. Bonnie Francisco from the human resources department responded to Woods's e-mail, stating that she was treating Woods's request as a formal request for voluntary reversion under the terms of the Collective Bargaining Agreement (CBA).

Because Woods was on medical leave and receiving L&I benefits, the DOC needed information regarding whether Woods could perform the job with or without accommodation. Her doctor had filed reports stating that she could be placed on light modified duty, but probably should not return to working with Van Ausdle because of the stress. He had not reviewed any documents specifically related to the job description and essential functions of the secretary

supervisor position. On June 21, 2007, the DOC requested that Woods obtain documentation from her doctor indicating whether she could perform the essential elements of the secretary supervisor position, with or without accommodation.

On June 28, Woods stated that she would have her doctor evaluate the job description and commuting requirements. When DOC did not hear from Woods, Armando Mendoza, the field administrator, sent Woods a letter on July 26, stating that because they had not received documentation approving her for work, she was now eligible to be placed on the internal layoff list per the terms of the CBA.

Woods filed a grievance alleging that the DOC's failure to provide her with a reversion was discriminatory. The DOC investigated this grievance. After reviewing the events leading up to the denial of the reversion and the terms of the CBA, the investigation found that Mendoza and Francisco properly complied with the terms of the CBA and did not engage in discriminatory action.

E.      EMPLOYMENT DISCRIMINATION SUIT

On September 30, 2009, Woods filed suit against the DOC and Van Ausdle. Woods's complaint alleged the following claims against the DOC: (1) hostile work environment, disparate treatment, failure to provide reasonable accommodation, and retaliation in violation of the Washington Law Against Discrimination (WLAD); (2) breach of contract; and (3) negligent supervision and retention. The DOC moved for summary judgment.

On November 8, 2012, Woods filed a report by Dr. Gary M. Namie opining on the effect of Van Ausdle's behavior on Woods. The DOC moved to strike the report as untimely. The trial court granted the motion.

On November 9, the superior court heard the motion for summary judgment. The superior court granted the DOC's motion for summary judgment and dismissed all of Woods's claims with prejudice. Woods appeals.

ANALYSIS

Woods argues that the superior court erred in excluding Dr. Namie's report. The superior court did not abuse its discretion by excluding the report because Woods did not timely file the report.

Woods also argues that the superior court erred in granting the DOC's motion for summary judgment. Woods raises numerous claims, and her arguments are varied. First, her claim of a hostile work environment was based on Van Ausdle's conduct toward her during her time at the records unit. The superior court did not err by granting summary judgment as to the hostile work environment claim because the statute of limitations barred her claim and because she failed to make a prima facie case of discriminatory intent. Second, Woods claims that she was subject to disparate treatment because she was separated from service rather than being granted her requested reversion. The superior court did not err by granting summary judgment because Woods cannot identify an appropriate comparator to demonstrate disparate treatment. Third, she claims that the DOC failed to accommodate her disability by separating her from service without providing an accommodation for her reversion. The superior court properly granted summary judgment because Woods failed to make a prima facie case of failure to accommodate by failing to demonstrate that she reasonably cooperated with the DOC. Fourth, Woods claims that her separation from state service was retaliatory. The superior court properly granted summary judgment because Woods fails to demonstrate a prima facie case by showing a

causal connection between her protected activities and the DOC's adverse employment action. Finally, Woods makes a claim for breach of contract and tort claims for negligent supervision and retention. The superior court did not err by granting summary judgment as to Woods's contract or tort claims.

## I. EXCLUSION OF DR. NAMIE'S REPORT

Woods argues that the superior court improperly excluded Dr. Namie's report, alleging the superior court failed to conduct a *Frye*[1] hearing to determine the admissibility of her expert's report. Because that the superior court did not abuse its discretion in excluding the report as untimely, we do not reach the *Frye* issue.

We review a trial court's decision to exclude an untimely declaration or report for an abuse of discretion. *Southwick v. Seattle Police Officer John Doe No. 1, et al.*, 145 Wn. App. 292, 301, 186 P.3d 1089 (2008) (citing *Brown v. Peoples Mortg. Co.*, 48 Wn. App. 554, 559, 739 P.2d 1188 (1987)). In *Southwick*, the appellate court affirmed the trial court's decision excluding an expert's affidavit from consideration in a summary judgment motion because the affidavit was untimely. 145 Wn. App. at 301-02.

Here, Woods filed Dr. Namie's report and affidavit with the court on November 8, 2012, just one day before the superior court was scheduled to hear the summary judgment motion. The DOC had been seeking Woods's expert's report for approximately two years prior to this disclosure; but Woods filed Dr. Namie's report to the DOC just one day before the summary judgment hearing. Under these circumstances, the disclosure of Dr. Namie's report was

---

[1] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

untimely. *See* CrR 56(c) (requiring that opposing affidavits be filed no later than 11 calendar days prior to the summary judgment hearing).

The superior court's decision to exclude Dr. Namie's report was not based on its admissibility, but rather on Woods's discovery violation and her late disclosure of the report. Accordingly, Woods's argument regarding the necessity of the *Frye* analysis is irrelevant, and we hold that the superior court did not abuse its discretion by excluding the report because it was untimely.

## II. SUMMARY JUDGMENT CLAIMS

### A. WLAD CLAIMS

Wood's complaint alleged the following WLAD claims against the DOC: hostile work environment, disparate treatment, failure to accommodate, and retaliation. The superior court properly granted summary judgment in favor of the DOC on all of Woods's WLAD claims.

The WLAD prohibits employment discrimination based on sensory, mental, or physical disability. RCW 49.60.030(1). Summary judgment is often inappropriate in discrimination cases because the WLAD is to be liberally construed and the evidence will generally result in competing inferences of both discrimination and nondiscrimination that must be resolved by a jury. *Frisino v. Seattle Sch. Dist. No. 1,* 160 Wn. App. 765, 777, 249 P.3d 1044, *review denied,* 172 Wn.2d 1013 (2011). However, summary judgment is appropriate when the plaintiff fails to raise a genuine issue of material fact as to one or more prima facie elements of the plaintiff's discrimination claims. *Frisino,* 160 Wn. App. at 777.

### 1. Hostile Work Environment

#### a. Statute of Limitations

As an initial matter, we note that Woods's hostile work environment claim arises from events while she worked at the records unit (which was before September 2006) Thus, her hostile work environment claim is barred by the statute of limitations.[2]

Woods's brought her claim for hostile work environment under chapter 49.60 RCW. All actions brought under chapter 49.60 RCW are subject to a three-year statute of limitations. *Goodman v. The Boeing Co.*, 75 Wn. App. 60, 77, 877 P.2d 703 (1994), *aff'd*, 127 Wn.2d 401 (1995).

Woods's hostile work environment claim under chapter 49.60 RCW is based on Van Ausdle's conduct towards her during Woods's time assigned to the records unit. Woods worked at the records unit from September 2005 until August 2006; therefore, claims filed in September 2009 for acts occurring during the period of time Woods worked at the records unit are outside of the statute of limitations and are barred.

Woods asserts that there was one act on February 7, 2007, that was part of a series of acts constituting repeated conduct, and thus, the claims are not barred by the statute of limitations. But this particular act was not part of the series of acts, and therefore, the statute of limitations applies and bars Woods's claim.

In *Antonius v. King County*, 153 Wn.2d 256, 103 P.3d 729 (2004), our Supreme Court articulated the rule for determining when the statute of limitations bars a claim based on a series

---

[2] Woods's claims for failure to accommodate, disparate treatment, and retaliation all result from her request for reversion and separation from state employment which occurred within the statute of limitations. 153 Wn.2d at 273-74.

on discriminatory acts[3] by adopting the analysis in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002):

> Under *Morgan*, a "court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and, if so, whether any act falls within the statutory time period." *Morgan*, 536 U.S. at 120. The acts must have some relationship to each other to constitute part of the same hostile work environment claim, and if there is no relation, or if "for some other reason, such as certain intervening action by the employer" the act is "no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts" as part of one hostile work environment claim. *Morgan*, 536 U.S. at 118.

153 Wn.2d at 271. "[A] gap, in and of itself, is not a reason to treat acts occurring before and after that gap as not constituting parts of the same unlawful employment practice under *Morgan*." *Antonius*, 153 Wn.2d at 272.

Here, the one act that Woods relies on is not part of the same series of events contributing to a hostile work environment such that the rule in *Antonius* makes her claim timely. Woods claims she was subjected to a series of acts that constituted a hostile work environment during the time she worked for Van Ausdle in the records unit. However, Woods stopped working in the records unit in August 2006 when she went on medical leave. While she was still on medical leave, she went to her office in February 2007, and was allegedly harassed when Van Ausdle walked up behind her in a manner Woods perceived as intimidating.

---

[3] *Antonius* distinguished claims for a hostile work environment, which is based on a series of acts, from discrimination claims based on a single, discrete act such as termination, failure to promote, refusal to hire, etc. *Antonius*, 153 Wn.2d at 264 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-13, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)). Hostile work environment claims "'are different in kind from discrete acts' and '[t]heir very nature involves repeated conduct.'" *Antonius*, 153 Wn.2d at 264 (quoting *Morgan*, 536 U.S. at 115). For claims based on a discrete act the statute of limitations clearly runs from the date the act occurred. *Antonius*, 153 Wn.2d at 264.

This is not the type of series of acts contemplated by *Anotonius* and *Morgan*. For example, in *Morgan*, the United States Supreme Court contemplated a hypothetical where either (1) a person was subject to continuing harassment over 400 consecutive days and files a claim on day 401 or (2) a person was subjected to harassment for days 1-100 and on day 401. 536 U.S. at 118. The court did not see a significant difference between the two hypotheticals because both created the same hostile work environment for the employee.

Similarly, in *Antonius*, the plaintiff was subjected to harassment when she worked at the Seattle jail, then transferred to a female jail where she was not subjected to harassment, and later transferred back to the Seattle jail. 153 Wn.2d at 259. Our Supreme Court stated that, as a matter of law, the gap did not bar an action based on the earlier incidents, seemingly based on the idea that a series of acts was occurring that continually made the Seattle jail a hostile work environment for the plaintiff at all times when she was employed there.[4]

Here, Woods did not return to work at the records unit after going on leave. Furthermore, the incident in February 2007 did not relate to the earlier incidents while Woods was working at the records unit. Woods complained that Van Ausdle was overly critical of her work, humiliated and belittled her about her work, and singled her out for harsh treatment regarding her work performance. The incident in February 2007 occurred while Woods was on medical leave and did not have anything to do with Woods personally or her work performance. All Woods stated was that Van Ausdle apparently bumped into her while walking up to her. The record does not show that Van Ausdle engaged in a confrontation with Woods, commented on her work or

---

[4] In *Antonius*, the court ultimately remanded to the trial court because the trial court applied the wrong test to determine whether the statute of limitations barred the plaintiff's claims.

11

whether she would return, or engaged in any other behavior Woods had complained about. Further, Woods never returned to the records unit, so there was no ongoing harassment that continued to make the records unit a hostile work environment during the statute of limitations period. Therefore, the rule in *Antonius* does not apply here, and Woods's hostile work environment is barred under the statute of limitations.

Even assuming that the statute of limitations did not bar Woods's hostile work environment claim, the superior court did not err in granting summary judgment and dismissing her claim.

### b. Prima Facie Hostile Work Environment Claim

Woods has failed to present a prima facie case of discrimination arising from a hostile work environment. To establish a prima facie case of disability discrimination resulting from a hostile work environment, Woods must show that (1) she was disabled within the meaning of the antidiscrimination statute, (2) the harassment was unwelcome, (3) the harassment was because of her disability, (4) the harassment affected the terms and conditions of her employment, and (5) that harassment was imputable to the employer. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 45, 59 P.3d 611 (2002). The fundamental point in a disability discrimination case is whether the employer acted with discriminatory intent or motive. *Parsons v. St. Joseph's Hosp. & Health Care Ctr.*, 70 Wn. App. 804, 807, 856 P.2d 702 (1993).

Here, summary judgment was appropriate because Woods failed to raise a genuine issue of material fact as to whether Van Ausdle was acting with discriminatory intent. The record establishes that the DOC investigated Woods's original discrimination grievance and found that Van Ausdle was using ineffective communication skills, for which the DOC recommended

changes to her management style. But, the investigation did not reveal any discriminatory intent on Van Ausdle's part.

Moreover, Woods presented evidence establishing that, after she left the records unit, other members of the records unit filed grievances against Van Ausdle arising from similar behavior that Woods had complained of. Woods is correct in her assertion that these complaints establish that Van Ausdle was mean to her. But Woods has to do more than show Van Ausdle was mean to her in order to support a discrimination claim. She also has to establish discriminatory intent. The additional complaints against Van Ausdle establish that Van Ausdle treated the majority of people in the records unit in the same manner as Woods. Accordingly, there is nothing in the record, outside of Woods's speculation, that establishes Van Ausdle was acting with discriminatory intent. Failure of proof on any one element of a prima facie case makes summary judgment proper. Because Woods has failed to raise a genuine issue of material fact as to Van Ausdle's discriminatory intent, the superior court properly granted summary judgment of her hostile work environment claim.

2.    Disparate Treatment

Woods claims that she was subject to disparate treatment because she was placed on the internal layoff list when other people who had complained about Van Ausdle's behavior were not placed on the internal layoff list. However, contrary to her assertion, Woods has failed to identify any appropriate comparator to establish a prima facie claim of disparate treatment.

To establish a prima facie case of disparate treatment, Woods must show that she (1) belongs to a protected class; (2) was treated less favorably in the terms and conditions of her employment than a similarly situated, nonprotected employee; and (3) the nonprotected

"comparator" was doing substantially the same work. *Domingo v. Boeing Emps.' Credit Union,* 124 Wn. App. 71, 81, 98 P.3d 1222 (2004). Woods compares her situation to other records unit employees who filed grievances against Van Ausdle and were not fired. Woods's position is misguided. To support her prima facie claim, she would need to demonstrate that she was treated differently than another employee who had been laid off per the terms of the CBA after attempting to obtain a reversion when returning from L&I leave. She has not done so. Without an appropriate comparator, Woods cannot show that she was treated differently based on belonging to a protected class, and she fails to raise a genuine issue of material fact as to one of the elements of a prima facie case for disparate treatment. The superior court did not err when it granted summary judgment on Woods's disparate treatment claim.

3.    Failure to Accommodate

Woods claims that the DOC failed to accommodate her disability by refusing her request for reversion to a secretary supervisor position. Under RCW 49.60.180, an employer is liable for discrimination if the employer fails to accommodate an employee's disability. It is unclear whether Woods is arguing that the DOC failed to accommodate her disability related to the back injury or arguing that the DOC failed to accommodate her mental condition. Regardless, both claims fail, and the superior court properly granted summary judgment.

If Woods's claim is based on the DOC's failure to accommodate her back injury, then she failed to cooperate with the DOC to establish an appropriate accommodation and, thus, failed to make a prima facie case of failure to accommodate. If Woods is claiming that reversion was a necessary accommodation due to her mental condition and working with Van Ausdle, then the

requested accommodation is unreasonable as a matter of law, and she has failed to make a prima facie case for failure to accommodate.

To establish a prima facie case of failure to accommodate, the employee must show that he or she (1) had a sensory, mental, physical abnormality that substantially limited his or her ability to perform the job; (2) was qualified to perform the essential functions of the job with or without reasonable accommodation; (3) gave the employer notice of the disability and its accompanying substantial limitations; and (4) after notice was given, the employer failed to adopt measures that were medically necessary to accommodate the disability. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145, 94 P.3d 930 (2004). If the employee fails to establish a prima facie case of failure to accommodate, the employer is entitled to judgment as a matter of law. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 181, 23 P.3d 440 (2001).

The process for accommodating an employee's disability relies on cooperation between employees and employers, as well as open communication between the parties. *Goodman v.*, 127 Wn.2d at 408-09. Although the employer has a duty to determine the extent of the employee's disability, the employee must give notice to trigger the employer's duty. *Goodman*, 127 Wn.2d at 409. And, "'the employee retains a duty to cooperate with the employer's efforts by explaining the disability and the employee's qualifications.'" *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013) (quoting *Frisino*, 160 Wn. App. at 779-80).

Here, Woods failed to cooperate with the DOC to establish a reasonable accommodation with regard to her back injury. Woods failed to provide the DOC with information about whether she was able to perform the essential functions of the job, or if she would need an accommodation in order to do so. After requesting this information, Woods stated that she

15

would get the information from her doctor; however, she did not communicate any further with the DOC after that. Woods claims that the DOC acted inappropriately because she was eventually able to obtain the appropriate documentation later. However, she never informed the DOC about the delay or the reason for it. We do not agree that an employer should be expected to wait for an employee to respond when there is no communication from the employee. By failing to communicate with the DOC and not providing documentation regarding her ability to perform the essential functions of the job and what accommodations, if any, would be necessary, Woods failed in her duty to "'cooperate with the employer's efforts by explaining the disability and the employer's qualifications.'" *Brownfield*, 178 Wn. App. at 876 (quoting *Frisino*, 160 Wn. App. at 779-80). Accordingly, she has failed to establish a prima facie failure-to-accommodate case.

In addition to a duty to cooperate, the accommodation requested by the employee must be reasonable. If Woods's claim is that the reversion request was an accommodation for her mental disability, the accommodation is, as a matter of law, unreasonable, and the DOC had no duty to provide her with the reversion as an accommodation. The employee bears the burden of showing that there was a reasonable accommodation available. *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 643, 9 P.3d 787 (2000), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006). Generally, whether an employer has made reasonable accommodations is a question of fact for a jury; however, certain requests are, as a matter of law, unreasonable. *Pulcino*, 141 Wn.2d at 644. For example, an employer is not required to reassign an employee to a position that is already occupied, to create a new position, or to eliminate or reassign essential job functions. *Pulcino*, 141 Wn.2d at 644. And, an employer has no duty to

provide a new supervisor as a reasonable accommodation. *Snyder v. Med. Serv. Corp.*, 145 Wn.2d 233, 240-41, 35 P.3d 1158 (2001).

*Snyder* is controlling here. In *Snyder*, the employee's conflicts and encounters with her supervisor resulted in post-traumatic stress syndrome. 145 Wn.2d at 237. Although she could perform the essential requirements of her job, she claimed that her mental condition prevented her from being able to perform her job under her current supervisor. *Snyder*, 145 Wn.2d at 241. The court rejected the employee's contention that a new supervisor was a reasonable accommodation her employer was required to provide, holding that "if [the employee] can perform the job, then she has no disability requiring accommodation simply because she has a personality conflict with her supervisor." *Snyder*, 145 Wn.2d at 241.

Here, Woods may have had mental conditions associated with, or aggravated by, her relationship with Van Ausdle. But that alone does not require the DOC to reassign her to a new position or provide her with a new supervisor. Woods has not presented any evidence establishing the need for an accommodation for her mental health condition beyond working with Van Ausdle. For example, all of her medical documentation states that it would probably be best for her mental condition if she did not return to working in a stressful environment with Van Ausdle, but they do not include any additional restrictions or accommodations. Therefore, the only accommodation Woods was requesting related to her mental condition was essentially a new supervisor which is, as a matter of law, an unreasonable accommodation. Thus, Woods has failed to raise any genuine issue of material fact as to an element of a prima facie case for failure to accommodate. Accordingly, the superior court did not err by granting DOC's motion for summary judgment.

4.    Retaliation

Woods claims that the DOC retaliated against her by refusing her request for reversion and ultimately terminating her employment in retaliation for filing grievances alleging discrimination and posting on a message board about bullying in the workplace.    RCW 49.60.210 protects employees from retaliation for engaging in protected activities opposing an employer's action forbidden by the WLAD.

To survive a motion for summary judgment, the employee must first establish a prima facie case of retaliation. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 68, 821 P.2d 18 (1991).    To establish a prima facie case of retaliation, the employee must show that (1) he or she engaged in a statutorily protected activity, (2) the employer to adverse employment action, and (3) there was a causal link between the employee's activity and the employer's adverse action. *Estevez v. Faculty Club of the Univ. of Wash.*, 129 Wn. App. 774, 797, 120 P.3d 579 (2005).    If the employee successfully established a prima facie case for retaliation, the burden shifts to the employer to demonstrate a legitimate, non-retaliatory explanation for its adverse employment decision. *Wilmot*, 144 Wn.2d at 68.    If the employer demonstrates a legitimate, nonretaliatory reason for its action, the employee must produce evidence establishing that the employer's stated reasons were pretext for discrimination. *Wilmot*, 144 Wn.2d at 68.    If the employee fails to do so, no genuine issue of material fact exists and the employer is entitled to judgment as a matter of law. *Barker v. Advanced Silicon Materials, LLC*, 131 Wn. App. 616, 624, 128 P.3d 633, *review denied*, 158 Wn.2d 1015 (2006).

Woods failed to make a prima facie case for retaliation.    Woods engaged in protected activities by filing antidiscrimination grievances and exercising her First Amendment rights to

engage in internet message boards regarding harassment and bullying in the workplace. In addition, Woods's separation from employment was an adverse employment action. However, Woods failed to establish a causal link between engaging in protected activities and the adverse employment action. Woods relies exclusively on drawing inferences from the timing of the protected activity and the adverse employment action—essentially employing flawed *post hoc ergo propter hoc*[5] reasoning. But, she fails to acknowledge that she initiated the process that resulted in the adverse employment action.

Woods affirmatively requested the reversion, presumably with the understanding of the process in the CBA and the potential for being placed on the internal layoff list. Therefore, even when viewing the evidence in a light most favorable to Woods, it cannot be said that Woods has made a prima facie showing of retaliation. Woods has presented no evidence to establish a causal connection between the protected activity and the adverse employment action. Accordingly, Woods has failed to present a prima facie case of retaliation, and summary judgment was appropriate.

Even if Woods established a prima facie case for retaliation, the DOC has established a legitimate, non-discriminatory reason for the adverse employment action, and Woods has failed to establish pretext. The DOC's legitimate, nondiscriminatory reason for its action is that the DOC simply followed the terms for reversion established by the CBA, which it did. Woods appears to attempt to establish pretext by arguing that she requested reversion to a specific job and conditioned her request for reversion by stating that her request did not become effective

---

[5] "After this, therefore, because of this" which is the flawed premise that because one event follows another, it must be caused by the preceding event.

until she was actually placed in the requested position. But there is nothing in the CBA that establishes this is the appropriate procedure for voluntary reversion. The CBA does not state that an employee may limit the reversion request to a specific job or specify that the reversion does not become effective until the employee gets the job he or she is seeking to revert to. Accordingly, Woods fails to present evidence establishing pretext, which is necessary to rebut the DOC's legitimate, nondiscriminatory reason for the adverse employment action. Summary judgment was appropriate.

B.    CONTRACT AND TORT CLAIMS

In addition to her WLAD claims, Woods filed claims for breach of contract and negligent supervision and retention. She alleges that the DOC breached the terms of the 2005 settlement agreement by not establishing a training plan by September 30, 2005, and by failing to ensure that she had input into her training plan. She also claims that the DOC was negligent in its supervision and retention of Van Ausdle as a supervisor. The superior court dismissed these claims on the DOC's motion for summary judgment.

The superior court did not err by granting summary judgment as to Woods's breach of contract claim because Woods's failed to raise a genuine issue of material fact as to whether there was a material breach of the settlement agreement. And, the superior court did not err in granting Woods's motion for summary judgment as to the negligent supervision and retention claims because they are duplicative of her WLAD claims.

We review a trial court's summary judgment ruling de novo. *Torgerson v. One Lincoln Tower, LLC,* 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any

genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Atherton Condo. Apartment–Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.,* 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider "all the facts submitted and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Atherton,* 115 Wn.2d at 516. "The moving party is held to a strict standard. Any doubts as to the existence of a genuine issue of material fact is resolved against the moving party." *Atherton,* 115 Wn.2d at 516.

1.     Breach of Contract Claim

"Settlement agreements are governed by general principles of contract law." *Lavigne v. Green,* 106 Wn. App. 12, 20, 23 P.3d 515 (2001). To prove a breach of contract claim, Woods has to show the existence of (1) a contract, (2) a material breach of the terms of the contract, and (3) damage resulting from the material breach. *St. John Med. Ctr. v. Dep't of Soc. & Health Servs.,* 110 Wn. App. 51, 64, 38 P.3d 383, *review denied,* 146 Wn.2d 1023 (2002). A material breach is often defined as one that substantially defeats the purpose of the contract. *Mitchell v. Straith,* 40 Wn. App. 405, 410, 698 P.2d 609 (1985) (citing 17 AM. JUR. 2D CONTRACTS § 504, at 981 (1964)).

Woods claims that there was a material breach of the settlement agreement because she did not have a collaborative training plan established by September 30, 2005. But, Woods cannot show that the breach was material, nor can she show that the breach, if any, resulted in damage. First, the plain language of the settlement agreement does not require that the DOC provide a final, collaborative training plan by September 30, 2005. It does not even require that a training plan be implemented by September 30. Rather, it simply requires that training needs

to be established. Woods was receiving some form of training and training materials to study during the period of time when there was no formal training plan. And, by December 5, she and Van Ausdle had established a formal training plan that was implemented and later completed. Woods has failed to demonstrate how the delay in establishing the formal training plan substantially defeated the purpose of the contract, which was to provide Woods with training during her trial service period.

In addition, Woods has failed to demonstrate how the failure to establish the training plan specifically by September 30, 2005, resulted in any damage. She did not leave the records unit because of lack of training, nor was lack of training the reason for her request for reversion or her ultimate separation from employment. Therefore, Woods has not shown that, even if DOC did breach the terms of the settlement agreement by not establishing the formal training plan by September 30, the breach caused damage. Therefore, the superior court properly granted the DOC's motion for summary judgment on the breach of contract claim.

2.    Negligent Supervision and Retention Claims

The superior court also dismissed Woods's claims for negligent supervision and retention. Woods failed to establish a separate legal basis for her negligent supervision and retention claims. Accordingly, the superior court did not err in granting the DOC's motion for summary judgment.

A claim for negligent supervision or retention can arise when an employer has a direct, independent duty "to control an employee for the protection of a third person." *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479, 271 P.3d 254 (2011). However, because an employer is vicariously liable for an employee's conduct when acting within the scope of

employment, a claim for negligent supervision or retention requires the plaintiff to show that the employee acted outside the scope of employment. *LaPlant*, 162 Wn. App. at 479-80. "Under Washington law, therefore, a claim for negligent hiring, training, and supervision is generally improper when the employer concedes the employee's actions occurred within the course and scope of employment." *LaPlant*, 162 Wn. App. at 480.

Here, Woods has not established any legal basis to support a negligent supervision or retention claim. The DOC has conceded that, if Van Ausdle's conduct was improper, it is vicariously liable for Van Ausdle's conduct because she was acting within the scope of her employment. Therefore, Woods has not demonstrated that Van Ausdle was acting outside the scope of her employment giving rise to a separate claim of negligent supervision or hiring.

## ATTORNEY FEES

Woods requests reasonable attorney fees under RAP 18.1. However, Woods has not cited to any legal authority for awarding her attorney fees in this case. RAP 18.1(a) allows this court to award attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." "Argument and citation to authority are required under the rule to advise us of the appropriate grounds for an award of attorney fees." *Bishop of Victoria Corp. Sole v. Corporate Business Park, LLC*, 138 Wn. App. 443, 462, 158 P.3d 1183 (2007) (citing *Austin v. U.S. Bank of Wash.*, 73 Wn. App. 293, 313, 869 P.2d 404, *review denied*, 124 Wn.2d 1015 (1994)), *review denied*, 163 Wn.2d 1013 (2008). Therefore, we do not consider Woods's request for attorney fees.

23

No. 44295-7-II

We affirm the superior court's order excluding Woods's late-filed expert report, granting the DOC's motion for summary judgment, and dismissing all of Woods' claims. We also deny Woods's request for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Hunt, J.

Bjorgen, A.C.J.

24